**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
────────────────────────────────────────

**BOARD OF TRUSTEES OF LOCAL 41**
**INTERNATIONAL BROTHERHOOD OF**
**ELECTRICAL WORKERS HEALTH FUND, et al.,**

                              **Plaintiffs,**

**v.**
                                                      **05-CV-0710-A(Sr)**

**N.E.R.S., INC.,**

                              **Defendant.**

────────────────────────────────────────

<u>**AMENDED REPORT, RECOMMENDATION AND ORDER**</u>

This case was referred to the undersigned by the Hon. Richard J. Arcara, pursuant to 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon dispositive motions.  Dkt. ##12 & 25.

Plaintiffs commenced this action pursuant to the Labor Management Relations Act ("LMRA"), 29 U.S.C. §185, and Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1132, alleging that N.E.R.S., Inc. ("NERS"), breached two collective bargaining agreements ("CBAs"), by failing to pay certain contributions to plaintiffs as required by those agreements.  Dkt. #1.

Currently before the Court are plaintiffs' motions for summary judgment pursuant to Fed. R. Civ. P. 56.  Dkt. ##12 & 13.  For the following reasons, it is recommended that plaintiffs' motions be granted.

## BACKGROUND

Local 41 International Brotherhood of Electrical Workers ("Union") and

NERS,[1] an electrical contractor, are parties to the Inside Wireman's Agreement and

the Interconnect-Security-Sound Agreement.  Dkt. #12-13, Exh. B &C.  Pursuant to

these CBAs, NERS was obligated to make specified employee benefit contributions to

the Union for each electrician, sound wireman, and sound installer referred by the

Union for employment by NERS.  Dkt. #12-13, Exh. B, §§2.09; 4.04 & Exh. C, §§2.08,

7.01.  The CBAs also obligated NERS to make certain contributions to a number of

employee benefit trust funds ("Funds").  Dkt. #12-13, Exh. B, §3.06 &  Exh. C, §4.05.

The Boards of Trustees are fiduciaries of these Funds.  Dkt. #12-2, ¶¶ 1, 5-6.


NERS utilized Union workers to perform work from February 2005

through August 2005.[2]  Dkt. #12-2, ¶ 7.  NERS filed monthly employer payroll reports

with the Funds for this time period, but failed to remit employee benefit contributions

as set forth in the CBAs.  Dkt. #12-20, Exh. 1, Complaint ¶ 5.


NERS does not dispute the calculation of outstanding employee benefit

contributions.  Dkt. #12-2, ¶ 13; Dkt. #12-3, ¶ 10; Dkt. #13-6, ¶13; Dkt. #21, ¶ 4.

Instead, NERS counterclaims that the Union breached its obligations under the CBAs

by failing to provide NERS with "skilled electrical field personnel" and by referring

---

[1] NERS became a party to these CBAs by executing Letters of Assent.  Dkt. ##12-13, Exh. A.

[2] Although this is the only time period in dispute in the instant action, a similar suit for contributions  was resolved in February 2006.  *See Board of Trustees of Local 41 International Brotherhood of Electrical Workers Health Fund v. N.E.R.S., Inc.*, No 05-CV-130.

"electrical field personnel who were unqualified to perform the tasks required." Dkt. #13-2, Exh. C, Counterclaim, ¶¶ 1-2.  As a result, NERS alleges that "the work performed was substandard, and hundreds of hours of additional labor costs had to be performed in order to rework and correct the improper and unsafe installations." Dkt. #13-2, Exh. C, Counterclaim, ¶ 3.

## DISCUSSION AND ANALYSIS

The Union contends that it fulfilled its obligations to NERS under the CBAs.  Dkt. #13, pp. 7-8.  It relies on the testimony of NERS' President, Michael Lentz, who conceded that he believed that all the workers provided by the Union were certified, had taken the appropriate courses, and were trained up to the level of their apprenticeship.  Dkt. #19, Exh. A, pp. 80-81.  The Union also relies on the fact that there is no provision in the CBAs that required the Union to provide NERS with workers of any particular skill level.  Dkt. #13-7, p. 4.  Furthermore, the Union argues that if the workers did not meet NERS' expectations, the CBAs gave NERS discretion to refuse to hire, lay off, transfer or discharge employees for proper cause.  Dkt. ##12-13, Exh. B, § 2.06 & Exh. C, § 2.02.  In any event, the Funds argue that the LMRA prevents an employer from avoiding its obligations to the Funds because of a disagreement with the Union.  Dkt. #12-28, p.4.

In response, NERS argues that there are triable issues as to whether the Union was required by contract to provide it with properly trained and qualified

personnel, and whether the Union, acting in bad faith, colluded and conspired to deprive it of qualified workers.  Dkt. #19, ¶ 8.

## Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  "In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party, and must give extra latitude to a pro se plaintiff."  *Thomas v. Irvin*, 981 F. Supp. 794, 799 (W.D.N.Y. 1997) (internal citations omitted).

A fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998).  A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be

defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of

conjecture or surmise." *Bryant*, 923 F.2d at 982.  A party seeking to defeat a motion

for summary judgment

> must do more than make broad factual allegations and
> invoke the appropriate statute.  The [party] must also
> show, by affidavits or as otherwise provided in Rule 56 of
> the Federal Rules of Civil Procedure, that there are
> specific factual issues that can only be resolved at trial.

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).


**<u>Union's Motion for Summary Judgment</u>**

The CBAs provide that the Union "shall be the sole and exclusive source

of referral of applications for employment."  Dkt. #12-13, Exh. B, § 7.02 & Exh. C, §

3.02.  Referrals are made in accordance with a priority grouping based upon, *inter

alia*, an applicant's years of experience in the trade, certification by the Joint

Apprenticeship and Training Committee, and successful completion of an examination

administered by the Union.  Dkt. #12-13, Exh. B, § 7.05 & Exh. C, § 3.05.  Mike Lentz,

former Vice President and current President of NERS, testified at his deposition that

he had no reason to believe that the individuals referred did not have the certification

and training required for their grouping.  Dkt. #13, pp.18-19 & 21.


In it's Counterstatement of Material Facts, NERS appears to concede

that the Union complied with the express terms of the CBAs by referring workers that

possessed the certifications required and instead argues that the Union breached the

covenant of good faith and fair dealing by providing workers that did not have proper

training for their respective certifications.  Dkt. #21, ¶¶ 2-3.  NERS also suggests that the Union breached the covenant of good faith and fair dealing by sabotaging the relationship between its members and NERS because NERS was an "out of town contractor."  Dkt. #19-7.

"[T]he covenant of good faith and fair dealing inheres in all contracts, including CBAs."  *United Mine Workers of America v. Rag American Coal Co.*, 392 F.3d 1233, 1241 (10th Cir. 2004).  The covenant "precludes each party from engaging in conduct that will deprive the other party of the benefits of their agreement."  *Filner v. Shapiro*, 633 F.2d 139, 143 (2d Cir. 1980).  "Implicit in every contract is a promise of good faith and fair dealing, which is breached when a party acts in a manner that, although not expressly forbidden by any contractual provision, would deprive the other party of the right to receive the benefits under the agreement."  *DCMR v. Trident Precision Mfg., Inc.*, 317 F. Supp. 2d 220, 226 (W.D.N.Y.), *aff'd,* 110 Fed. Appx. 205 (2004).  However, such a claim "cannot substitute for an unsuitable breach of contract claim."  *Id.*

In the instant case, NERS  has offered no admissible evidence supporting its contention that the Union breached the covenant of good faith and fair dealing.  It has merely offered the conclusory allegations of its counsel that plaintiffs "colluded and conspired" to provide workers whose "certifications were fraudulent."  Dkt. #19, ¶ 5.  This is insufficient to raise a triable issue of fact, particularly in light of Mr. Lentz's deposition testimony that he had no reason to believe that the individuals

referred did not have the certification and training required for their grouping.  Dkt.

#13, pp.18-19 & 21.  Similarly, when asked specifically at his deposition whether he

had any reason to believe that the Union told its members to sabotage their work for

NERS, Mr. Lentz denied any knowledge of any such instructions.  Dkt. #19-4, p.13.


As plaintiffs point out, the CBAs provide that the employer possesses

"the right to reject any applicant for employment."  Dkt. #12-13, Exh. B,

§ 7.03 & Exh. C, § 3.03.  In addition, the CBAs recognize that

> the Employer is responsible to perform the work required
> by the owner.  The Employer shall therefore have no
> restrictions, except those specifically provided for in the
> Collective Bargaining Agreement in planning, directing and
> controlling the operation of all his work, in deciding the
> number, and kind of employees to properly perform the
> work, in hiring and laying off of employees, in transferring
> employees from job to job within the Local Union's
> geographical jurisdiction, in determining the need and
> number as well as the person who will act as foreman, in
> requiring all employees to observe the employer's and/or
> owner's rules and regulations not inconsistent with this
> Agreement, in requiring all employees to observe all safety
> regulations and discharging employees for proper cause.

Dkt. #12-13, Exh. B, § 2.06 & Exh. C, § 2.02.  In fact, Mr. Lentz testified at his

deposition that when he complained about the problems he was experiencing with

some workers, the Union's Business Agent advised him to lay those workers off.  Dkt.

#19-3, p.20.  Although Mr. Lentz testified that the recourse available to him under the

CBAs was impractical because laying workers off required new workers to learn the

job under tight time schedules, terminating workers invoked the grievance procedure

and many of the problems were only discovered after the work was supposedly
completed, he did not dispute the availability of those options to manage the project
and conceded that productivity improved when he ultimately laid off some of the union
members who were causing problems.  Dkt. #19-4, pp. 15, 95-97, 99-100, 105.  Thus,
defendant has proffered no factual basis to support its claim that the Union breached
its obligation under the CBAs or that the Union acted in a manner that would deprive
NERS of its rights pursuant to the contract.  Accordingly, it is recommended that the
Union's motion (Dkt. #13), for summary judgment be granted and that NERS'
counterclaim be dismissed and the Union be awarded judgment in the amount of
$15,388.16 plus 9% interest from September 1, 2005 through the date of judgment.
Dkt. #13-2, ¶ 2.


**Funds' Motion for Summary Judgment**

Even if NERS' argument against the Union had merit, that would not
affect its obligation to the Funds.  As set forth by section 515 of ERISA:

> "Every employer who is obligated to make contributions to
> a multiemployer plan under the terms of the plan or under
> the terms of a collectively bargained agreement shall, to
> the extent not inconsistent with law, make such
> contributions in accordance with the terms and conditions
> of such plan or such agreement."

29 U.S.C. § 1145.  The Court of Appeals for the Second Circuit has determined that
"in enacting this provision, Congress intended to limit the defenses available to an
employer when sued by an employee benefit plan." *De Vito v. Hempstead China*

*Shop, Inc.*, 38 F.3d 651, 653 (2d Cir. 1994).  Even though ERISA funds are third-party

beneficiaries of CBAs between employers and unions, by adopting this provision,

Congress granted ERISA funds certain protections not afforded to typical third-party

beneficiaries.  *See Benson v. Brower's Moving & Storage, Inc.*, 907 F. 2d 310, 313

(2d Cir.), *cert. denied*, 498 U.S. 982 (1990), *citing Lewis v. Benedict Coal Corp.*, 361

U.S. 459, 468-69 (1960).  Specifically, an employer may not raise the Union's breach

of the CBA as a defense against an employee benefit fund suing for delinquent

contributions unless the CBA preserved such a defense in "unequivocal words."  *Id.*

"Simply put, benefit plans must be able to rely on the contribution

promises of employers because plans must pay out to beneficiaries whether or not

employers live up to their obligations." *Benson,* 907 F.2d at 314; *see National Elec.*

*Benefit Fund v. Heary Bros. Lightning Protection Co., Inc.*, 931 F. Supp. 169, 180-183

(W.D.N.Y. 1995).  For this reason, the Second Circuit has recognized that only two

employer defenses are available in ERISA § 515 contribution actions: "(1) that the

[ERISA fund] contributions themselves are illegal, and (2) that the collective

bargaining agreement is void (not merely voidable)."  *DeVito,* 38 F.3d at 653, *quoting*

*Benson*, 907 F.2d at 314.  Because NERS' argument that the Union breached the

CBAs does not fall within either category of the defenses recognized under ERISA

§515, it is recommended that the Funds' motion (Dkt. #12), for summary judgment be

granted and that NERS' counterclaim be dismissed and the Health, Pension, Annuity,

Education & Unit Pension Funds be awarded judgment totaling $215,739.75 plus 24%

interest on the delinquent principal contributions from August 12, 2006 through the date of judgment and that the National Electrical Benefit Fund be awarded judgment in the amount of $12,027.40 plus 10% interest on the delinquent principal contributions from August 12, 2006 through the date of judgment.  Dkt. #12-3, ¶ ¶ 8-10.

## CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that plaintiffs' motions for summary judgment (Dkt. ##12 & 13), be **GRANTED** and that the Union be awarded judgment in the amount of $15,388.16 plus 9% interest from September 1, 2005; the Health, Pension, Annuity, Education & Unit Pension Funds be awarded judgment totaling $215,739.75 plus 24% interest on the delinquent principal contributions from August 12, 2006 through the date of judgment and the National Electrical Benefit Fund be awarded judgment in the amount of $12,027.40 plus 10% interest on the delinquent principal contributions from August 12, 2006 through the date of judgment.

Accordingly, pursuant to 28 U.S.C. § 636(b)(1), it is hereby

ORDERED, that this Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72.3(a)(3).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but was not presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order</u>. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." <u>Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Report,</u>

<u>Recommendation and Order), may result in the District Judge's refusal to consider the</u>

<u>objection.</u>

The Clerk is hereby directed to send a copy of this Order and a copy of

the Report and Recommendation to counsel for the parties.

**SO ORDERED.**

DATED:      Buffalo, New York
            October 24, 2007

<u>**S/ H. Kenneth Schroeder, Jr.**</u>
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**